

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

*Michelle V. Larson*

**Signed April 10, 2026**

_____
**United States Bankruptcy Judge**

_____

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **L.D. LYTLE, INC.,** | § | **CASE NO. 25-32454** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**ORDER CONFIRMING DEBTOR'S PLAN OF REORGANIZATION
UNDER SUBCHAPTER V OF CHAPTER 11, AS MODIFIED**

CAME ON FOR CONSIDERATION BY THE COURT the *Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* [Docket No. 65], as modified by the *First Modification to Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* [Docket No. 117] and the *Second Modification to Debtor's Plan of Reorganization Under Subchapter V of chapter 11* [Docket No. 126] (collectively, "Plan") filed by L.D. Lytle, Inc. ("Debtor"), Debtor in the above-styled and numbered case. The Court, having considered the Plan, the ballot tally, and other evidence presented at the hearing, and there being no objections to the confirmation of the

Order Confirming Debtor's Plan of Reorganization
Under Subchapter V of Chapter 11, as Modified
Page 1

Plan, made its findings of fact and conclusions of law orally on the record, which findings and conclusions are incorporated by reference herein and set forth in part as follows (capitalized terms used in this Order and not defined herein shall have their respective meanings set forth in the Plan, or if not defined in the Plan, as defined in the Bankruptcy Code):

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. The Debtor commenced the subject bankruptcy case by the filing of a voluntary petition under chapter 11 of the United States Bankruptcy Code on June 30, 2025 (the "Petition Date").

2. The deadline for filing objections to the Plan was January 19, 2026.

3. The Confirmation hearing was calendared for January 27, 2026, and was continued to April 8, 2026 at 1:30 p.m.

4. The Debtor proposed the Plan in good faith to provide for the treatment of all claims against the Debtor and this bankruptcy estate.

5. All creditors and other parties in interest, in accordance with the orders of this Court, timely received copies of: (a) the Plan; and (b) the Notice of Hearing on Confirmation of Plan of Reorganization. Further, all such parties, in accordance with the orders of this Court, timely received appropriate notice of: (a) the time within which ballots must have been received by the Debtor; (b) the time within which objections to confirmation must have been filed; and (c) the Confirmation Hearing.

6. The Ballot summary, which was filed with the Court on January 23, 2026 [Docket No. 104], reflects the Debtor received 2 votes accepting the Plan and 1 vote rejecting confirmation of the Plan.

Order Confirming Debtor's Plan of Reorganization
Under Subchapter V of Chapter 11, as Modified
Page 2

7. The Court has jurisdiction over this matter as a core proceeding pursuant to the provisions of 11 U.S.C. § 157(b)(2)(A)-(L) and (O).

8. The Plan meets all requirements of §§ 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with § 1125 of the Bankruptcy Code with respect to the Plan by § 1181.

9. The Plan complies with all pertinent provisions of § 1129 as modified by § 1191 of the Bankruptcy Code (as set forth in greater detail below) and with all other requirements of the Bankruptcy Code.

a. <u>Due and Sufficient Notice</u>. Notice of the Confirmation Hearing was appropriate and complied, in all respects, with Bankruptcy Rule 2002(b).

b. <u>Plan Compliance – Bankruptcy Code Section 1129(a)(1)</u>. The Plan complies with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

c. <u>Proponent Compliance – Bankruptcy Code Section 1129(a)(2)</u>. The Debtor has complied with the applicable provisions of the Bankruptcy Code.

d. <u>Good Faith – Bankruptcy Code Section 1129(a)(3)</u>. The Plan has been proposed in good faith under Section 1129(a)(3) and not by any means forbidden by law and the Debtor is entitled to the protections of Section 1125(e).

e. <u>Payments – Bankruptcy Code Section 1129(a)(4)</u>. Payments made or to be made by the Debtor for services or for costs and expenses in or in connection with the Plan and/or case have been approved by or are subject to the approval of this Court.

f. <u>Disclosures Regarding Post-Confirmation Management – Bankruptcy Code Section 1129(a)(5)</u>. The Debtor accurately disclosed in the Plan the identity and any affiliations of the individuals proposed to serve as officers and directors of the Debtor after

Order Confirming Debtor's Plan of Reorganization
<u>Under Subchapter V of Chapter 11, as Modified</u>
Page 3

the Plan is confirmed, and the compensation to be paid to such individuals after confirmation of the Plan.

g. <u>No Rate Change – Bankruptcy Code Section 1129(a)(6)</u>. No governmentally regulated rates are involved in this case.

h. <u>Best Interests of Creditors – Bankruptcy Code Section 1129(a)(7)</u>. With respect to the impaired classes of claims or interests, each holder of a claim or interest of such classes has accepted the Plan or will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would receive or retain if the Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date.

i. <u>Bankruptcy Code Sections 1129(a)(8) and 1191(c)(1)</u>. The Debtor satisfied the requirements of Bankruptcy Code § 1129(a)(8) as it received 2 ballots in favor of confirmation. Respecting § 1129(b)(2)(A):

    i. There are no secured Ad Valorem Tax claimants.

j. <u>Unimpaired Classes</u>. There are no Unimpaired claimants.

k. <u>Disposable Income and Plan Funding – Bankruptcy Code Sections 1129(a)(8) and 1192(c)(2) and (3)</u>. The Debtor satisfied the requirements of Bankruptcy Code § 1129(a)(8) for Class 8.

    i. The holders of Class 8 Claims (Allowed Unsecured Claims) are impaired. One class member voted to accept confirmation of the Plan and one class member voted to reject confirmation of the Plan. The treatment of any such claims satisfies the provisions of 11 U.S.C. §§ 1129(b) and 1191(c)(2) and (3).

Order Confirming Debtor's Plan of Reorganization
<u>Under Subchapter V of Chapter 11, as Modified</u>
Page 4

l.      Priority Claims – Bankruptcy Code Section 1129(a)(9).  Claims entitled to priority under 11 U.S.C. § 507(a)(8) will be paid in accordance with the Bankruptcy Code or as per the provisions of the Plan.

m.      Class Acceptance – Bankruptcy Code Section 1129(a)(10).  One class of claims that is impaired under the Plan accepted the Plan.

n.      Feasibility – Bankruptcy Code Section 1129(a)(11).  The Plan is a Plan of reorganization.

o.      Fees – Bankruptcy Code Section 1129(a)(12).  All fees payable under 28 U.S.C. § 1930(a)(3) have been paid or will be paid on the Effective Date.

p.      Retiree Benefits – Bankruptcy Code Section 1129(a)(13).  There are no retiree benefits involved in this case.

q.      Domestic Support Obligations – Bankruptcy Code Section 1129(a)(14).  Section 1129(a)(14) is not applicable in this case.

r.      Domestic Support Obligations – Bankruptcy Code Section 1129(a)(15).  Section 1129(a)(15) is not applicable in this case.

s.      Transfer Compliance – Bankruptcy Code Section 1129(a)(16).  The Plan does not contemplate the transfer of property and thereby complies with the provisions of 11 U.S.C. § 1129(a)(16).

THEREFORE, based upon the foregoing findings of fact and conclusions of law:

## ORDER

**IT IS HEREBY ORDERED** that:

1.      The findings set forth above and conclusions of law stated herein and as stated orally on the record shall constitute the Court's findings of fact and conclusions of law pursuant

Order Confirming Debtor's Plan of Reorganization
Under Subchapter V of Chapter 11, as Modified
Page 5

to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014. To the extent any finding of fact shall later be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law later shall be determined to be a finding of fact, it shall be so deemed.

2. All objections, if any, if not withdrawn, waived or settled at or prior to the hearing are overruled on the merits.

3. The Plan, a true and correct copy of which is attached hereto and incorporated herein by this reference, is and shall be hereby confirmed in all respects pursuant to Sections 1129(a) and 1191(b) of the Bankruptcy Code and the Debtor shall be the disbursing agent.

4. The amount of the monthly IRS priority Plan payment shall be $764.98, with the final balance due by the end of the Plan term.

5. All perfected liens and security interests of any creditor shall continue to be perfected with respect to such creditor's collateral.

6. The Debtor has negotiated an agreement with Texas Capital Bank to recognize its claim in full. This Order modifies the Plan's First Modification to state the claim need not be determined by the Court but is agreed to and allowed in full as paid under the Plan.

7. This Court shall retain jurisdiction over this case and related matters, proceedings and issues as set forth in the Plan and to the fullest extent allowed by the Bankruptcy Code except to the extent otherwise set forth herein.

8. This Order is hereby declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further additional orders, certifications or other supporting documents.

Order Confirming Debtor's Plan of Reorganization
Under Subchapter V of Chapter 11, as Modified
Page 6

9.     That each and every federal, state, commonwealth, local, foreign or other governmental authority, agency or department is hereby directed to accept any and all documents and instruments necessary, useful or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order.

10.     To the extent that the terms of the Plan conflict with any prior Orders of this Court, the terms of the Plan shall be controlling.

11.     Within fourteen (14) days after the date of the entry of this Order, the Debtor shall mail or cause to be mailed to all Creditors who have filed a proof of claim in this case (provided such claims have not previously been disallowed), parties who have filed a Notice of Appearance, parties to rejected leases or executory contracts and all other parties listed on the Debtor's Master Service List, notice of entry of this Order.

# # # END OF ORDER # # #

Submitted by:
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Attorneys for Debtor

Order Confirming Debtor's Plan of Reorganization
Under Subchapter V of Chapter 11, as Modified
Page 7

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| L.D. LYTLE, INC., | § | CASE NO. 25-32454 |
| | § | |
| Debtor. | § | Chapter 11 |

## DEBTOR'S PLAN OF REORGANIZATION
## UNDER SUBCHAPTER V OF CHAPTER 11

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 South Dallas St.
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**TABLE OF CONTENTS**

Article I.        INTRODUCTION......................................................................................4

Article II.       DEFINITIONS ........................................................................................4

Article III.      VOTING ON THE PLAN AND OBJECTIONS ..................................7

Article IV.       BACKGROUND.....................................................................................8
    4.1    Background of the Debtor and Events Leading to Bankruptcy .........................8
    4.2    Significant Events Since the Petition Date........................................................9
    4.3    Assets of the Debtor .........................................................................................9
    4.4    Liabilities of the Debtor ...................................................................................9
    4.5    Tax Consequences of the Plan .......................................................................10

Article V.        LIQUIDATION ANALYSIS ................................................................11

Article VI.       PLAN OF REORGANIZATION..........................................................13
    6.1    Treatment of Unclassified Claims, Administrative Expense Claims, Priority
       Claims, and U.S. Trustee Fees ......................................................................13
    6.2    Classification of Claims and Interests............................................................14
    6.3    Claims and Interests Impaired Under the Plan................................................14
    6.4    Treatment of Classified Claims and Interests Under the Plan ........................14
    6.5    Implementation of the Plan ............................................................................16
    6.6    Feasibility of the Plan.....................................................................................17
    6.7    Provisions Regarding Distributions and Objections to Claims.......................17
    6.8    Executory Contracts .......................................................................................18

Article VII.      RESERVATION OF CLAIMS..............................................................19
    7.1    Reservation of Claims and Causes of Action..................................................19
    7.2    Return of Fraudulent Transfers .......................................................................19

Article VIII.     EFFECT OF CONFIRMATION, DISCHARGE, RELEASES
AND INJUNCTION ..........................................................................................................19
    8.1    Vesting of Property .........................................................................................19
    8.2    Plan Creates New Obligations.........................................................................20
    8.3    Legal Binding Effect ......................................................................................20
    8.4    Discharge.........................................................................................................20
    8.5    Satisfaction of Claims and Interests ...............................................................20
    8.6    Modification of the Plan..................................................................................20
    8.7    Retention of Jurisdiction .................................................................................21
    8.8    Temporary Injunction .....................................................................................22

Article IX.       MISCELLANEOUS PROVISIONS.....................................................22
    9.1    Request for Relief Under Bankruptcy Code § 1129(b).....................................22
    9.2    Headings..........................................................................................................22
    9.3    Due Authorization............................................................................................22

| 9.4 | Further Assurances and Authorizations | 22 |
|---|---|---|
| 9.5 | Applicable Law | 22 |
| 9.6 | No Interest | 23 |
| 9.7 | Post-Confirmation Actions | 23 |
| 9.8 | Notices of Default | 23 |
| 9.9 | Notices | 23 |
| 9.10 | Payment Dates | 23 |
| 9.11 | De Minimis Distribution | 23 |

EXHIBITS:

Exhibit 1 – Monthly Operating Reports
Exhibit 2 – Schedule A/B

## ARTICLE I.  INTRODUCTION

This Plan of Reorganization under Subchapter V of Chapter 11 (the "Plan") is proposed by L.D. Lytle, Inc., the debtor in this Bankruptcy Case (the "Debtor").  This case was initiated by the filing of a voluntary petition for relief by the Debtor on June 30, 2025 under Subchapter V of Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division. This *Debtor's Plan of Reorganization Under Subchapter V of Chapter 11* is provided pursuant to the Bankruptcy Code to all the Debtor' known creditors and other parties in interest. The Plan is a Plan of Reorganization.  Under the Plan the Debtor will sell its real, improvements and business commonly known as Sunshine Kids Academy in Red Oak, Texas and the business and personal property commonly known as Sunshine Kids Academy in Ennis, Texas 75154, and use the sale proceeds to fund the payments due under the Plan. The details of the Plan are set out in Article VI of this document.

The Office of the United States Trustee appointed Katherine B. Clark to serve as the Subchapter V Trustee in this Case (the "Trustee").  The Trustee is responsible for monitoring the Case and ensuring the Debtor' compliance with the applicable provisions of the U.S. Bankruptcy Code.

**YOUR RIGHTS MAY BE AFFECTED. YOU SHOULD READ THESE PAPERS CAREFULLY AND DISCUSS THEM WITH YOUR ATTORNEY. IF YOU DO NOT HAVE AN ATTORNEY, YOU MAY WISH TO CONSULT ONE.**

## ARTICLE II.  DEFINITIONS

Except as expressly provided herein or unless the context otherwise requires, the terms set forth in this Article II shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form that is not defined herein, but that is defined in the Bankruptcy Code, shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

"**Administrative Expense Claim**" means an administrative expense or claim described in Bankruptcy Code § 503 and entitled to administrative priority pursuant to Bankruptcy Code § 507(a)(1), including, but not limited to, Fee Claims.

"**Allowed Amount**" means the amount of any Allowed Claim.

"**Allowed Claim**" means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that: (i) a Proof of Claim or request for payment was timely filed, or, with leave of the Bankruptcy Court, late filed, and as to which no objection has been timely filed with the Bankruptcy Court, or, if filed, is allowed by a Final Order, unless otherwise provided in this Plan; (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and no objection has been timely filed or, if filed, is allowed by a Final Order; or (iii) with respect to an Administrative Expense Claim or Fee Claim, the Administrative Expense Claim or Fee Claim has been approved by a Final Order upon notice and application to the Bankruptcy Court.

"**Assets**" means property of the Estate.

"**Avoidance Actions**" means any and all rights, claims, and causes of action which a trustee, Debtor, or other appropriate party in interest would be able to assert on behalf of the Estate under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542-551, and 553.

"**Bankruptcy Case**" or "**Case**" means this Case No. 25-32454 pending before the Bankruptcy Court.

"**Bankruptcy Code**" or "**Code**" means the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, as amended.

"**Bankruptcy Court**" or "**Court**" means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division, or other such court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

"**Bankruptcy Rules**" means the Federal Rules of Bankruptcy Procedure, as amended, and "**Bankruptcy Rule**" refers to a specific rule therein.

"**Bar Date**" means September 8, 2025, the deadline established by the Bankruptcy Court pursuant to Bankruptcy Rule 3003(c)(3), after which any Proof of Claim may not be timely filed, except Claims held by governmental agencies.

"**Business Day**" shall mean any day that is not a Saturday, Sunday, or one of the legal holidays listed in Bankruptcy Rule 9006(a).

"**Claim**" shall have the meaning set forth in Bankruptcy Code § 101(5).

"**Claimant**" or "**Creditor**" means the holder of a Claim or interest in the Assets.

"**Class**" means any class into which Claims are classified pursuant to Article VI of the Plan. Each subclass of a class shall be treated as a separate class.

"**Collateral**" means any Assets of the Debtor subject to a valid Lien held by a Secured Creditor.

"**Confirmation**" means the Bankruptcy Court's entry of the Confirmation Order.

"**Confirmation Date**" means the date on which the Order confirming this Plan is entered.

"**Confirmation Hearing**" means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

"**Confirmation Order**" means the Order confirming this Plan.

"**Contested**" when used with respect to a Claim, means a Claim against the Debtor: (i) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (ii) that is listed in the Debtor's Schedules of Assets and Liabilities as undisputed, liquidated, and not contingent and as to which a Proof of Claim has been filed with the Bankruptcy Court, to the extent the Proof of Claim amount exceeds the scheduled amount; (iii) that is the subject of

a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (iv) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

 "**Debtor**" means L.D. Lytle, Inc., the Debtor herein. Where the context so requires, "**Debtor**" shall also include the Reorganized Debtor after Confirmation of the Plan.

"**Disputed**" with respect to a Claim means either: (i) a Claim which has been objected to by the Debtor; or (ii) a Claim that is listed on the Debtor's bankruptcy schedules as "disputed, contingent or unliquidated" and for which such Creditor or Interest holder has not filed a Proof of Claim.

"**Effective Date**" means the thirtieth (30th) day after the Confirmation Date.

"**Estate**" means the bankruptcy estate of the Debtor in this Case.

"**Fee Claim**" means a Claim under Bankruptcy Code §§ 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in this Bankruptcy Case.

"**Fee Application**" means an application filed with the Bankruptcy Court for allowance of a Fee Claim.

"**Final Order**" means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

"**Impaired**" means the treatment of an Allowed Claim or Interest pursuant to the Plan unless, with respect to such Claim or Interest, either: (i) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim or Interest to demand or receive accelerated payment of such Claim or Interest after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in § 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim or Interest as such maturity existed before such default; (C) compensates the holder of such Claim or Interest for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim or Interest entitles the holder of such Claim or Interest; or (iii) the Plan provides that on the Effective Date, the holder of such Claim or Interest receives, on account of such Claim or Interest, cash equal to the Allowed Amount of such Claim or Interest.

"**Insider**" has the meaning provided by § 101(31) of the Bankruptcy Code.

"**Interest**" means any equity or ownership interest in the Debtor.

"**Lien**" means any charge against or interest in property to secure payment of debt or performance of an obligation and includes a judicial lien, security interest, and deed of trust, mortgage and property tax lien.

"**Order**" means an Order of the Bankruptcy Court.

"**Petition Date**" means June 30, 2025, the date on which an Order for Relief was entered by the Court.

"**Plan**" means this Plan of Reorganization under Subchapter V of Chapter 11, including any amendments, modifications or corrections made thereto pursuant to the Bankruptcy Code.

"**Priority Tax Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(8).

"**Priority Wage Claim**" means a Claim entitled to priority pursuant to Bankruptcy Code § 507(a)(4)(A).

"**Proof of Claim**" means a written statement setting forth a Creditor's Claim filed in this Case and conforming substantially to the appropriate official form.

"**Pro Rata**" means the percentage that an Allowed Claim represents in relation to the total Allowed Claims in the relevant Class.

"**Schedules and Statements**" means and refers to each of the Debtor' bankruptcy schedules A/B, D-H and Statement of Financial Affairs.

"**Secured Claim**" means a Claim that is secured within the meaning of Bankruptcy Code § 506(a). Should the value of the collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the collateral and an Unsecured Claim for the remainder.

"**Unsecured Claim**" means any Claim that is not a Secured Claim or an Administrative Expense Claim and that is not entitled to priority treatment under Bankruptcy Code § 507.

## ARTICLE III. VOTING ON THE PLAN AND OBJECTIONS

### 3.1 Who May Vote

You are entitled to vote on the Plan unless:

    (1)    your Claim or Interest is Disputed (as defined herein);

    (2)    your Class receives no distribution (presumed to reject the Plan);

    (3)    your Class is "unimpaired" (presumed to accept the Plan – *See* Article VI to see if your Class is Impaired or unimpaired); or

    (4)    your Claim is unclassified (and thus required by law to be paid in full).

If your Claim or Interest is Disputed, then you must file a motion and have it allowed for voting purposes (you must do that soon so that your motion can be heard before votes are counted. *See* Bankruptcy Rule 3018(a)).

### 3.2 <u>How to Vote</u>

Fill out and return the attached ballot (if you are entitled to vote) **by the deadline** and according to the other instructions in the enclosed order regarding voting and procedures.

### 3.3 <u>Effect of Vote</u>

After a plan of reorganization has been filed, it must either be accepted by holders of claims against, or interests in, the debtor, or be found by the Court not to discriminate unfairly and that it is fair and equitable with respect to each class of claims or interests that is impaired under the plan or that has not accepted the plan.

Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (½) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. A Subchapter V Chapter 11 does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.

### 3.4 <u>Who May Object</u>

Even if you are not entitled to vote, you may object to Confirmation of the Plan if you believe that the requirements for Confirmation are not met (and if you are a party in interest in this bankruptcy case). For the deadlines and procedures to object, see the enclosed order.

## ARTICLE IV.  BACKGROUND

### 4.1 <u>Background of the Debtor and Events Leading to Bankruptcy</u>

The Debtor is the owner of three day care centers known as Sunshine Kids Academy. Two of the centers, Sunshine Kids Academy in Ennis, Texas (the "Ennis Center") and Sunshine Kids Academy in Ferris, Texas (the "Ferris Center"), are operating. The third center, Sunshine Kids Academy in Red Oak, Texas (the "Red Oak Center"), has been undergoing a complete remodel and is not operating. The Red Oak Center is located on real property owned by the Debtor, which is currently under a Court-approved contract for sale. The Ennis Center is located on real property owned by an affiliate of the Debtor; however, the day care business located on the property is owned by the Debtor. The Ferris Center is located on real property which is leased by the Debtor from a third party.

The filing of this bankruptcy case was caused primarily by a non-monetary default by the Debtor on a secured loan, which led to a posting for foreclosure and ultimately the filing of this case.

**4.2    Significant Events Since the Petition Date**

On August 22, 2025, the Court entered a final order allowing the Debtor to use the cash collateral of its secured lenders according to an operating budget.

On September 18, 2025, the Court entered an Order authorizing the Debtor to sell the Red Oak Center, including the real property, the day care business and the personal property located in the building, pursuant to a contract with 4452 Broad, LLC (the "Buyer"). A copy of the contract is attached as an exhibit to the Buyer's *Limited Response to Debtor's Motion to Sell* (Docket No. 56).

**4.3    Assets of the Debtor**

The Debtor owned the following Assets as of the Petition Date:

a.    The Red Oak Center, including the real property, the day care business and the personal property located in the building; is under contract for a sale price of $1,450,000.00.

b.    The Ennis Center day care business has a going concern value of approximately $1,000,000.00.

c.    The Ferris Center day care business has a going concern value of approximately $25,000.

d.    Cash in the amount of $15,182.82;

e.    Deposits in the amount of $3,100.00;

f.    Inventory in the amount of $6,200.00;

g.    Furniture, equipment, and fixtures valued at $24,800.00; and

h.    Machinery, equipment and vehicles in the amount of $36,689.00.

Such Assets are listed in detail on the Debtor's Schedule B, which is attached hereto as **Exhibit "2"**.

**4.4    Liabilities of the Debtor**

The Debtor scheduled total liabilities (excluding Administrative Expense Claims) of $2,857,968.97 as of the Petition Date. Creditors may file Proofs of Claim that differ from the amounts shown in the Schedules.

The Debtor' liabilities are further described as follows:

a. **Administrative Expense Claims.**

The Estates will be liable for certain Administrative Expense Claims pursuant to Bankruptcy Code §503(b) through the Confirmation Date, including Fee Claims of Joyce W. Lindauer Attorney, PLLC as the Debtor's bankruptcy counsel. Before the Debtor pays any Fee Claims, the Bankruptcy Court will have determined the reasonableness of such fees and expenses.

b. **Priority Claims.**

The Internal Revenue Service filed a Priority Claim in the amount of $34,944.29.

c. **Secured Claims.**

Ellis County, Texas filed a Secured Claim in the amount of $23,447.66.

Ally Bank filed a Secured Claim in the amount of $32,847.64.

Three Horizons Group, LLC filed a Secured Claim in the amount of $931,831.88.

Expansion Capital Group filed a Secured Claim in the amount of $86,945.00.

United First, LLC filed a Secured Claim in the amount of $26,330.23.

The Debtor scheduled a Secured Claim for Home Tax Solutions in the amount of $40,000.00.

The Debtor scheduled a Secured Claim for Ennis State Bank in the amount of $20,000.00.

**Unsecured Claims.**

The Debtor scheduled total Unsecured Claims in the amount of $322,968.97.

Northeast Bank filed an Unsecured Claim in the amount of $49,452.50.

Texas Capital Bank filed an Unsecured Claim in the amount of $1,576,330.23.

Purple Tree Funding, LLC filed an Unsecured Claim in the amount of $55,100.00

**4.5** **Tax Consequences of the Plan**

a. **Disclaimer.** The Debtor does not purport to provide tax advice to the holders of Claims. The following is intended only as a summary of possible federal income tax consequences of the Plan and is not a substitute for careful tax planning with a tax professional. The following is for information purposes only and is NOT tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances. Accordingly, holders of Claims are urged to consult with their

tax advisors about the federal, state, local, and foreign tax consequences of the Plan on their tax returns and tax liabilities.

**b.** **Tax Consequences.** Implementation of the Plan may result in federal income tax consequences to holders of Claims or Interests and the Debtor. Tax consequences to a particular Claim or Interest holder may depend on the particular circumstances or facts regarding the Claim or Interest. IRS Publication 908, entitled "Bankruptcy Tax Guide" provides valuable information regarding the federal income tax aspects of bankruptcy. The "Bankruptcy Tax Guide" is available directly from the IRS online at http://www.irs.gov/pub/irs-pdf/p908.pdf.

**c.** **Cancellation of Debt.** Cancellation of the Debtor's debt ("**COD**") is generally considered as taxable income of the Debtor. COD is the amount by which the indebtedness discharged exceeds any consideration given in exchange. However, there are exceptions which prevent COD from being treated as taxable income. To the extent the Debtor is insolvent or the Debtor is discharged in a bankruptcy proceeding, as is the case at bar, the Internal Revenue Code excludes COD from income. The statutory exclusion for COD from the Debtor's gross income in a Chapter 11 bankruptcy case arises where a discharge is granted by the Court as is requested in the Plan.

**d.** **Holders of Allowed Claims.** The tax consequences associated with distributions under the Plan to the holders of an Allowed Claim will depend on, among other things: (i) the consideration received or deemed to have been received by the holder of any such Claim; (ii) whether the Allowed Claim holder reports income on an accrual or cash basis; (iii) the taxable year in which any distributions under the Plan are received by the Allowed Claim holder; (iv) whether the Claim was Allowed or Contested/Disputed as of the Effective Date; and (v) whether such Allowed Claim holder had previously written the obligation off as bad debt. ALLOWED CLAIM HOLDERS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE PLAN.

## ARTICLE V.  CHAPTER 7 LIQUIDATION ANALYSIS

Section 1129(a)(7) of the Bankruptcy Code requires that a Chapter 11 plan of reorganization must provide at least as much value to each Impaired Creditor as could be realized in a liquidation under Chapter 7 of the Bankruptcy Code.

In determining whether the requirements of Section 1129(a)(7) of the Bankruptcy Code have been met, the first step is to determine the dollar amount that would be generated from a hypothetical liquidation of the Debtor's assets in Chapter 7. Such amounts must then be reduced by the costs and expenses of the liquidation. Further reductions would be required to eliminate cash and asset liquidation proceeds that would be applied to Secured Claims and amounts necessary to satisfy Priority Claims that are senior to general Unsecured Claims (and Administrative Expense Claims that may result from the termination of the Debtor's business and the liquidation of its assets).

**Liquidation Analysis**

Liabilities shown below are as scheduled by the Debtor, or, if a Creditor filed a Proof of Claim, in the amount of said Claim.

The Debtor believes that in a Chapter 7 liquidation the Chapter 7 trustee would complete the sale of the Red Oak Center to the Buyer and would agree to lift the automatic stay to allow Secured Creditors to foreclose their liens on the personal property located in the Debtor's other day care centers. The Debtor believes the value of its non-cash assets would be reduced by approximately 5% due to costs of liquidation, and that the net proceeds from the foreclosure of its personal property would likely be no more than 50% of its scheduled value.

Based on the above, the Debtor estimates that the results of a Chapter 7 liquidation sale would be as follows:

**Assets in Chapter 7 liquidation**

| | |
|---|---|
| Cash | $15,182 |
| Real Property  (Red Oak Center) | $1,450,000 |
| Ennis Center (50% of scheduled value) | $500,000 |
| Ferris Center (50% of scheduled value) | $12,500 |
| Inventory (50% of scheduled value) | $3,100 |
| Furniture, fixtures and equip. (50% of scheduled value) | $12,400 |
| Machinery, equipment and vehicles (50% of scheduled value) | $18,345 |
| Gross proceeds | $2,011,527 |
| Less 5% sale costs | <u><$100,576></u> |
| Total Assets in Ch. 7 liquidation | $1,910,951 |

**Liabilities**

| | |
|---|---|
| Administrative Expenses and UST Fees | $25,000[1] |
| Priority Claims | $34,944 |
| Secured Claims | $1,158,403 |
| Unsecured Claims | <u>$1,907,507</u> |
| Total Liabilities | $3,125,854 |

*NOTE:* **As shown by the above chart, in a Chapter 7 liquidation Unsecured Claims would be paid only in part. Under this Plan, however, Allowed Unsecured Claims will be paid in full**

---

1. Debtor's estimate.

**with interest. Therefore, Creditors will receive at least as much under this Plan as they would in a Chapter 7 liquidation.**

## ARTICLE VI.  PLAN OF REORGANIZATION

**6.1     Treatment of Unclassified Claims, Administrative Expense Claims, Priority Tax Claims, and U.S. Trustee Fees**

**a.     Unclassified Claims.** All Allowed Claims (except Administrative Expense Claims and Priority Tax Claims) are placed in Classes for all purposes, including voting on, confirmation of, and distributions under this Plan. In accordance with Bankruptcy Code § 1123(a)(1), Administrative Expense Claims and Allowed Priority Tax Claims have not been classified.

**b.     Administrative Expense Claims.** Each holder of an Administrative Expense Claim under Bankruptcy Code § 503 shall receive either: (i) with respect to Administrative Expense Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Administrative Expense Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Administrative Expense Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**c.     Fee Claims.** Each professional person whose retention with respect to  this Case has been approved by the Bankruptcy Court or who holds, or asserts, an Administrative Expense Claim that is a Fee Claim shall be required to file with the Bankruptcy Court a final fee application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The Subchapter V Trustee is a professional in this case. The failure to file timely any such application as required shall result in the Fee Claim being forever barred and discharged. A Fee Claim, with respect to which a Fee Application has been properly filed, shall become an Administrative Expense Claim only to the extent allowed by Final Order. Fee Claims shall be paid either: (i) with respect to Fee Claims which are Allowed Claims on the Effective Date, the amount of such holder's Allowed Claim in one cash payment, within ten (10) days after the Effective Date, from the Debtor; (ii) with respect to Fee Claims which become Allowed Claims after the Effective Date, the amount of such holder's Allowed Claim, in one cash payment from the Debtor within ten (10) days after such Claim becomes an Allowed Fee Claim; or (iii) such other treatment agreed upon by the Debtor and such holder.

**d.     Administrative Expense Claims Bar Date.** Any other person or entity who claims to hold an Administrative Expense Claim (other than a Fee Claim) shall be required to file with the Bankruptcy Court an application within sixty (60) days after the Effective Date and to serve notice thereof on all parties entitled to such notice. The failure to file timely the application as required under this section) of this Plan shall result in the Claim being forever barred and discharged. An Administrative Expense Claim with respect to which an application has been properly filed and to which no timely objection has been

filed or an objection has been filed but overruled by the Bankruptcy Court, shall become an Allowed Claim to the extent such Claim is allowed by Final Order.

      **e.**     **Priority Claims.** Priority Claims, if any, shall be paid in full over the period from the Effective Date to the expiration of 60 (sixty) months from the Petition Date, with interest thereon at the statutory rate of interest. The Claims will be paid in equal monthly installments of principal and interest, commencing on the first day of the first month following the Effective Date and continuing on the first day of each month thereafter. The Debtor believes there are no such claims.

## 6.2    Classification of Claims and Interests

Claims against the Debtor, excluding Administrative Expense Claims and Priority Claims. are divided into the following Classes:

Class 1 Claims: Allowed Secured Claim of Ellis County, Texas.

Class 2 Claims: Allowed Secured Claim of Three Horizons Group, LLC.

Class 3 Claims: Allowed Secured Claim of Expansion Capital Group.

Class 4 Claims: Allowed Secured Claim of Home Tax Solutions.

Class 5 Claims: Allowed Secured Claim of Ally Bank.

Class 6 Claims: Allowed Secured Claim of United First, LLC.

Class 7 Claims: Allowed Secured Claim of Ennis State Bank.

Class 8 Claims: Allowed Unsecured Claims.

Class 9 Equity Interests: Equity Interest Holders.

## 6.3    Claims and Interests Impaired Under the Plan

The Claims in all the above Classes are Impaired and entitled to vote on this Plan, except Class 9 Equity Interests, which are not Impaired.

## 6.4    Treatment of Classified Claims and Interests Under the Plan

**General Provisions Regarding Treatment of Claims.**

All Allowed Secured Claimants shall retain all their liens on any Collateral securing their Claims.

No Claimant shall be entitled to a pre-payment penalty if their Claim is paid early.

Should the value of the Collateral securing a Secured Claim be less than the amount of the Claim, the Claim will be bifurcated into a Secured Claim equal to the value of the Collateral and an Unsecured Claim for the remainder.

**The Debtor will complete the sale of the Red Oak Center as discussed above and will promptly begin marketing the Ennis Center for sale as soon as possible. The Debtor anticipates the Ennis Center will be sold within 6-9 months from the Effective Date. Net proceeds of the sales will be applied first to pay Claims secured by Collateral, in order of lien priority, then to pay Allowed Unsecured Claims. Should the Collateral for an Allowed Secured Claim be sold during the term of this Plan, the Claim will be paid in full in order of lien priority at the closing of the sale to the extent sale proceeds after closing costs are available, and any remaining Claim will be treated as an Unsecured Claim. All Allowed Claims will receive payments as set out below pending the sales of the Red Oak Center and Ennis Center.**

**Class 1: Allowed Secured Claim of Ellis County, Texas.** This Claim shall be paid in full in equal monthly installments of principal with interest thereon at the rate of 12% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Petition Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 2: Allowed Secured Claim of Three Horizons Group, LLC**. This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum. Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 3 Claims:  Allowed Secured Claim of Expansion Capital Group.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 4 Claims:  Allowed Secured Claim of Home Tax Solutions.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claims:  Allowed Secured Claim of Ally Bank.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claims:  Allowed Secured Claim of United First, LLC.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 7 Claims:  Allowed Secured Claim of Ennis State Bank.** This Claim shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 5% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date, or upon sale of any Collateral securing this Claim, if earlier. Interest shall begin to accrue on the Effective Date. This Claim is Impaired, and the holder of this Claim is entitled to vote to accept or reject the Plan.

**Class 8 Claims:  Allowed Unsecured Claims.** These Claims shall be paid in full over 60 months from the Effective Date in equal monthly installments of principal with interest thereon at the rate of 1% per annum.  Payments will commence on the first day of the first month following the Effective Date and continue until the expiration of 60 months from the Petition Date. Interest shall begin to accrue on the Effective Date. Should the sales of the Red Oak Center and Ennis Center result in net sale proceeds in excess of Allowed Secured Claims against those properties, such proceeds shall be applied to payment of Allowed Unsecured Claims on a Pro Rata basis. These Claims are Impaired, and the holders of these Claims are entitled to vote to accept or reject the Plan.

**Class 9: Equity Interests:** Equity Interests shall be retained by the owners of said Interests.

**6.5      Implementation of the Plan**

The Debtor will complete the sale of the Red Oak Center as discussed above and will promptly begin marketing the Ennis Center for sale as soon as possible. The Debtor anticipates the Ennis Center will be sold within 6-9 months from the Effective Date. Net proceeds of the sales will be used to pay Allowed Secured Claims as set out above, and then to pay Allowed Unsecured Claims.

Risk factors. Although the Debtor believes the Plan satisfies all requirement necessary for Confirmation, there can be no assurance that the Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for Confirmation or

that such modifications would not necessitate the re-solicitation of votes to accept the Plan as modified.

### 6.6 Feasibility of the Plan

The Debtor believes the Plan is feasible because all creditors with Allowed Claims will be paid under fair and equitable terms. Projections for the feasibility of the Plan are attached hereto as **Exhibit "3"** and incorporated herein by this reference.

### 6.7 Provisions Regarding Distributions and Objections to Claims

**a.** **Time of Payment.** The first month in which payments will be made under this Plan will be as provided by the terms of this Plan.

**b.** **Delivery of Payment.** All payments or distributions required under this Plan shall be made to holder of the applicable Claim at: (i) the address set forth on the Proofs of Claim filed by such holders (or at the last known address of such holders if no Proof of Claim is filed or if the Debtor has been notified of a change of address); (ii) the address set forth in any written notices of address change delivered to the Debtor after the date of any related Proof of Claim; or (iii) if neither of the foregoing is applicable, at the addresses reflected in the Debtor' bankruptcy schedules, unless otherwise agreed to by the holder of such Claim and the Debtor.

**c.** **Confirmation under Section 1191(b) – Distributions by Trustee.** If the Plan is Confirmed as a non-consensual plan under the provisions of 11 U.S.C. section 1191(b), the Trustee shall serve as the payment administrator pursuant to 11 U.S.C. section 1194(b) for the purpose of making distributions under the Plan and shall be compensated for his work as payment administrator at the same hourly rate as may be approved by the Court for his pre-Confirmation work in this Case. The Debtor shall submit such funds as are necessary for the Trustee to make distributions under the Plan no later than seven (7) days prior to the date such distributions are due.

**d.** **Confirmation under Section 1191(b) – Disposable Income Distributions.** In the alternative to the treatment of Class 8 Unsecured Claims as stated in Article VI above, if the Plan is determined to be a "non-consensual" plan under Bankruptcy Code Section 1191(b), all of the Debtor's disposable income will be paid pro-rata to Class 4 Claimants on a monthly basis over 36 months. "Disposable income" shall mean all income remaining after the Debtor's payment of its reasonable and necessary expenses, less a reserve of $10,000 to be built by the Debtor's retention of $2,500 per month for the first four months following the Effective Date.

**e.** **No Distribution Pending Allowance or Estimation of Claims.** No payments or distributions shall be made with respect to all or any portion of a Contested Claim unless and until such Claim becomes an Allowed Claim or Allowed Interest, as determined by Final Order. No holder of a Claim shall be entitled to any payment under the Plan if such holder has retained property of the Estate.

**f.      Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of prepetition Claims at any time prior to sixty (60) days after the Effective Date or, as to Claims based upon the Debtor's rejection pursuant to this Plan of an executory contract or unexpired lease, at any time prior to thirty (30) days after the filing of any such rejection Claim. Any Proof of Claim filed after the Bar Date shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; provided, however, that the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

**g.      Suspension of Payments on Disputed Claims.** If any Claim has been objected to within the time required, the Debtor shall segregate and set aside, from the funds on hand for distribution to the Claimant's Class, funds sufficient to satisfy the payment otherwise due on the Claim according to the provisions of the Plan. In the event that the claim objection is overruled or a dispute is resolved favorably to the party asserting the Claim, then the funds shall be paid to the Creditor in accordance with applicable Class provisions. If the Disputed Claim is disallowed, the funds segregated in deference to the Claim shall be disbursed to other parties in interest, according to the applicable provisions of the Plan.

**h.      Post-Confirmation Fees and Expenses of the Trustee.** The Trustee shall be entitled to recoup reasonable fees and costs incurred performing his obligations as Trustee under this paragraph from the Plan Payments by submitting a fee and expense statement to the Reorganized Debtor, the Office of the United States Trustee, and Holders of Allowed Claims (the "Notice Parties"). The Trustee shall be compensated for his post-confirmation duties at normal hourly rates and shall be paid from the amounts paid by the Debtor for Plan Payments. The amount distributed or reserved to creditors will be net of the amounts remitted by the Reorganized Debtors to the Trustee. The Trustee's fees and expense shall be disclosed in the quarterly report filed with the Court. All parties in interest will have 21 days after the quarterly report is filed to object to the Trustee's fees and expenses disclosed therein. If no objection is received, the Trustee may disburse his fees and expenses from the Plan Payments without further order of the Court.

### 6.8    Executory Contracts

**General Rejection of Executory Contracts and Unexpired Leases.** Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date <u>or under this section of this Plan</u>, or that are the subject of a pending motion to assume, and if applicable assign, or that were entered after the Petition Date, the Debtor hereby is conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date.

THE DEBTOR HEREBY ASSUMES ITS LEASE AS LESSEE OF THE BUILDING HOUSING THE SUNSHINE KIDS ACADEMY LOCATED AT 100 N INTERSTATE

HIGHWAY 45, FERRIS, TX 75125 (WITH SHERRI HARRISON AS LESSOR), AS DESCRIBED IN SCHEDULE G OF THE DEBTOR'S SCHEDULES.

## ARTICLE VII. RESERVATION OF CLAIMS

### 7.1 Reservation of Claims and Causes of Action

Any and all claims, causes of action, cross claims, or counterclaims held or assertable by the Debtor, including but not limited to: (i) any claim or cause of action under a policy of liability insurance or otherwise; (ii) the Avoidance Actions; and (iii) any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which the Debtor have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract or in tort, or otherwise, known or unknown, suspected or unsuspected, are hereby preserved and retained for enforcement by the Debtor as of the Confirmation Date. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor' Schedules and Statements.

### 7.2 Return of Fraudulent Transfers

Any Creditor determined to have received a transfer that is voidable pursuant to sections 544, 547, 548, 549, and/or 550 of the Bankruptcy Code or any other applicable law shall be required to remit to the Debtor the determined amount of the avoided transfer prior to receiving any distribution under this Plan.

## ARTICLE VIII. EFFECT OF CONFIRMATION, DISCHARGE, RELEASES AND INJUNCTION

### 8.1 Vesting of Property

On the Confirmation Date of the Plan, all property of the Estate shall vest in the Debtor pursuant to sections 1141(b) and (c) of the Bankruptcy Code, free and clear of all Claims and interests except as otherwise provided in this Plan. However, if the Plan is Confirmed as a non-consensual plan under the provisions of 11 U.S.C. section 1191(b), the property of the Estate will not re-vest in the Debtor on the Confirmation Date but will remain as property of the Estate until the final payment is made under the Plan. This Plan will evidence the release of all Liens or

encumbrances against all property dealt with by the Plan, unless such Lien or encumbrance is specifically retained in the Plan.

### 8.2 Plan Creates New Obligations

Except as otherwise provided in the Plan, (1) the payment terms promised in the Plan constitute new contractual obligations that replace any payment terms that existed prior to the Effective Date, and (2) all rights and obligations other than those new payment terms continue to apply.

### 8.3 Legal Binding Effect

The provisions of this Plan shall bind all holders of Claims and interests, whether or not they accept this Plan.

### 8.4 Discharge

If the Debtor's Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; or (ii) to the extent provided in § 1141(d)(6).

If the Debtor's Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

### 8.5 Satisfaction of Claims and Interests

Except as otherwise provided by the Plan, the consideration distributed under the Plan shall be in complete satisfaction of all Claims of any Creditor, including Claims arising prior to the Effective Date.

### 8.6 Modification of the Plan

**Prior to Confirmation.** The Debtor may modify this Plan at any time prior to Confirmation, provided the modification complies with the requirements of sections 1122, 1123 and 1127 of the Bankruptcy Code. Upon the filing of any such modifications with the Bankruptcy Court, the Plan, as modified, becomes the Plan.

**After Confirmation.** The Debtor may modify the Plan at any time after Confirmation, upon compliance with Bankruptcy Code § 1127. The Debtor or their attorney shall provide notice of any such proposed modification to all Creditors and other parties in interest in these Chapter 11 proceedings. If, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interest of the Creditors, the Bankruptcy Court may modify the Plan without

notice to Creditors or may modify the Plan upon notice only to those Creditors that the Bankruptcy Court deems to be materially and adversely affected.

### 8.7 **Retention of Jurisdiction**

The Bankruptcy Court shall retain jurisdiction over this Bankruptcy Case after Confirmation of the Plan to the fullest extent provided for, or allowed, under the Bankruptcy Code and other applicable law. Specifically, but not by way of limitation, the Bankruptcy Court shall retain jurisdiction for the following purposes:

     **a.**    to consider and effect any modification of this Plan under Bankruptcy Code § 1127;

     **b.**    to hear and determine all controversies, suits and disputes that arise in connection with the interpretation, implementation, effectuation, consummation or enforcement of this Plan;

     **c.**    to hear and determine all requests for compensation and/or reimbursement of expenses for the period commencing on the Petition Date through the Confirmation Date;

     **d.**    to hear and determine all objections to Claims and Interests, and to determine the appropriate classification of any Claim or Interest, and other controversies, suits and disputes that may be pending at or initiated after the Confirmation Date, except as provided in the Confirmation Order;

     **e.**    to hear and determine all causes of action;

     **f.**    to consider and act on such other matters consistent with this Plan as may be provided in the Confirmation Order;

     **g.**    to make such Orders as are necessary and appropriate to carry out and implement the provisions of this Plan; including to effect the further assurances provided in this Plan;

     **h.**    to approve the reasonableness of any payments made or to be made, within the meaning of Bankruptcy Code § 1129(a)(4);

     **i.**    to exercise the jurisdiction granted pursuant to sections 505(a) and (b) of the Bankruptcy Code to determine any and all federal, state, Commonwealth, local and foreign tax liabilities of, and any and all refunds of such taxes paid by the Debtor;

     **j.**    to hear and determine any issues or matters in connection with any property not timely claimed as provided in this Plan; and

     **k.**    to determine any and all motions, applications, adversary proceedings and Contested matters whether pending in the Case as of the Effective Date or brought subsequently by the Debtor.

Nothing contained herein shall be construed to limit the rights of the Debtor to commence or prosecute any claim in any court of competent jurisdiction.

### 8.8 Temporary Injunction

Except as otherwise expressly provided in, or permitted under, this Plan, the Confirmation Order shall provide, among other things, that all Creditors and persons who have held, hold, or may hold Claims or Interests against the Debtor, are enjoined on and after the Effective Date as long as the Plan is not in default and has not been completed against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor or any third-party guarantor on account of Claims against the Debtor; (ii) enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any third-party guarantor or any assets or property of same; or (iii) creation, perfection, or enforcement of any encumbrance of any kind against the Debtor or any third-party guarantor arising from a Claim. Such injunction expires at the end of the Plan term at which time all Allowed Claims will have been paid in accordance with the terms of the Plan.

## ARTICLE IX. MISCELLANEOUS PROVISIONS

### 9.1 Request for Relief Under Bankruptcy Code § 1129(b)

In the event any Impaired Class of Claims or Interests shall fail to accept this Plan in accordance with Bankruptcy Code § 1129(a), the Debtor requests that the Bankruptcy Court confirm this Plan in accordance with the provisions of Bankruptcy Code § 1129(b).

### 9.2 Headings

All headings utilized in this Plan are for convenience and reference only and shall not constitute a part of this Plan for any other purpose.

### 9.3 Due Authorization

Each and every Claimant who elects to participate in the distributions provided for herein warrants that such Claimant is authorized to accept, in consideration of such Claim against the Debtor, the distributions provided for in this Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by such Claimant under this Plan.

### 9.4 Further Assurances and Authorizations

The Debtor shall seek such orders, judgments, injunctions, and rulings that may be required to carry out further the intentions and purposes, and to give full effect to the provisions of, this Plan.

### 9.5 Applicable Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties, and obligations arising under this Plan shall be governed by and construed and enforced in

accordance with the internal laws of the State of Texas without reference to the laws of other jurisdictions.

**9.6    No Interest**

Except as expressly stated in this Plan, or allowed by the Bankruptcy Court, no interest, penalty, or late charge is to be Allowed on any Claim subsequent to the Petition Date.

**9.7    Post-Confirmation Actions**

After Confirmation, the Debtor may, with the approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of the Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation Order, in such manner as may be necessary to carry out the purposes and effect of the Plan.

**9.8    Notices of Default**

In the event of a default under the Plan, the affected Claimant or its counsel shall provide notice to counsel for the Debtor/Reorganized Debtor. The Debtor/Reorganized Debtor shall have twenty (20) days to cure the default. In the event the Debtor/Reorganized Debtor fails to cure the default within 20 days after receipt of notice, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside of the Bankruptcy Court. The Debtor/Reorganized Debtor shall only be entitled to two notices of default. In the event of a third default, the Claimant shall be entitled to pursue collection of all amounts owed pursuant to state law outside the Bankruptcy Court without further notice.

**9.9    Notices**

All notices, requests, elections, or demands in connection with the Plan shall be in writing and shall be deemed to have been given when received or, if mailed, five (5) days after the date of mailing provided such writing shall have been sent by registered or certified mail, postage prepaid, return receipt requested. A copy of all notices provided to the Debtor under this Plan shall be sent to: (i) the Debtor at 1105 Mockingbird Cr., Ennis, Texas 75119 and (ii) the Debtor's attorney, Joyce W. Lindauer, Joyce W. Lindauer Attorney, PLLC, 117 S. Dallas St., Ennis, Texas 75119 Telephone: (972) 503-4033; Fax: (972) 503-4034; Email: joyce@joycelindauer.com.

**9.10    Payment Dates**

Whenever any payment or distribution to be made under the Plan shall be due on a day other than a Business Day, such payment or distribution shall instead be made, without interest, on the next Business Day, except as may be provided in negotiable instruments requiring such payments.

**9.11    De Minimis Distribution**

No single distribution payment of less than $5.00 shall be required to be made to any holder of an Allowed Claim. Rather, any such de minimis distribution amount shall be held by the Debtor,

added to the amount of the next distribution, and remitted to the holder of the Allowed Claim upon reaching a total greater than $5.00.

Dated: September 29, 2025.

Respectfully submitted,

/s/ Joyce W. Lindauer
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas St.
Ennis TX 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
Attorneys for Debtor

/s/ Lisa Lytle
Lisa Lytle
Owner of the Debtor



# EXHIBIT "1"

**Miscellaneous:**

Filed: 06/30/2025    Closed:
Reopen:    Dismissed:
Dismissed(jdb):
Converted:    Discharged:
Discharged(jdb):

25-32454-mvl11 L.D. Lytle Inc,

| | | |
|---|---|---|
| Type: bk | Chapter: 11 v | Office: 3 (Dallas) |
| Assets: y | Judge: mvl | Case Flag: REFORM, Subchapter_V, EXHIBITS, SmBus |

Summary    History    Parties    Filers    Docket Sheet    Deadlines/Hearings    Status    Pending Motions    Creditors    Claims Register

## U.S. Bankruptcy Court

## Northern District of Texas

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 9/29/2025 at 10:11 AM CDT and filed on 9/29/2025

**Case Name:** L.D. Lytle Inc,
**Case Number:** 25-32454-mvl11
**Document Number:** 64

**Docket Text:**
Debtor-In-Possession Monthly Operating Report for Filing Period August 2025 filed by Debtor L.D. Lytle Inc,. (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** August 2025.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017686615 [Date=9/29/2025] [FileNumber=52277824-
0] [158dbd8d3b4ce04907fb95c5f539bc102fa1e589a71dbb021159ee504fe079ff92
b9d76d82fb867777e08a8f6df04c63990930de8a4a238d8e92ca3d7c3245fc]]

**25-32454-mvl11 Notice will be electronically mailed to:**

Katharine B. Clark -SBRA V
KClark@ThompsonCoburn.com,
smeiners@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;KClark@ecf.axosfs.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Katharine B. Clark -SBRA V on behalf of Trustee Katharine B. Clark -SBRA V
KClark@ThompsonCoburn.com,
smeiners@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;KClark@ecf.axosfs.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Richard G. Dafoe on behalf of Creditor Texas Capital Texas Capital Bank
rdafoe@vinlaw.com, rdafoe@ecf.inforuptcy.com;jwhite@ecf.inforuptcy.com

Shanna M. Kaminski on behalf of Interested Party United First, LLC
skaminski@kaminskilawpllc.com

John P. Lewis, Jr. on behalf of Creditor Three Horizons Group, LLC
jplewis@haywardfirm.com, mholmes@haywardfirm.com

Joyce W. Lindauer on behalf of Debtor L.D. Lytle Inc,
joyce@joycelindauer.com, dian@joycelindauer.com;JoyceWLindauerAttorneyPLLC@jubileebk.net

Mark Joseph Petrocchi on behalf of Creditor 4452 Broad, a Delaware Limited Liability Company
mpetrocchi@lawgjm.com, acamarena@lawgjm.com;mpetrocchi@yahoo.com;acamarena@lawgjm.com

Wyatt John Shirley on behalf of Creditor Three Horizons Group, LLC
wshirley@haywardfirm.com

John Kendrick Turner on behalf of Creditor Ellis County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Broocks Wilson on behalf of Interested Party United First, LLC
mack@wilson-pllc.com

**25-32454-mvl11 Notice will not be electronically mailed to:**

Ally Bank c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Debtor Name ___L.D. Lytle Inc._____

United States Bankruptcy Court for the: __Norrthern__ District of ___Texas____

Case number: ___25-32454_____

☐ Check if this is an amended filing

## Official Form 425C

## Monthly Operating Report for Small Business Under Chapter 11          12/17

Month: _August_

Line of business: _ChildCare_____

Date report filed: _____
MM / DD / YYYY

NAISC code: _624410_

In accordance with title 28, section 1746, of the United States Code, I declare under penalty of perjury that I have examined the following small business monthly operating report and the accompanying attachments and, to the best of my knowledge, these documents are true, correct, and complete.

Responsible party: _Lisa Lytle_____

Original signature of responsible party _Lisa Lytle_____

Printed name of responsible party _Lisa Lytle_____

### 1. Questionnaire

Answer all questions on behalf of the debtor for the period covered by this report, unless otherwise indicated.

|  | | Yes | No | N/A |
|---|---|---|---|---|
| | **If you answer *No* to any of the questions in lines 1-9, attach an explanation and label it *Exhibit A.*** | | | |
| 1. | Did the business operate during the entire reporting period? | ☑ | ☐ | ☐ |
| 2. | Do you plan to continue to operate the business next month? | ☑ | ☐ | ☐ |
| 3. | Have you paid all of your bills on time? | ☐ | ☑ | ☐ |
| 4. | Did you pay your employees on time? | ☐ | ☑ | ☐ |
| 5. | Have you deposited all the receipts for your business into debtor in possession (DIP) accounts? | ☐ | ☐ | ☐ |
| 6. | Have you timely filed your tax returns and paid all of your taxes? | ☐ | ☑ | ☐ |
| 7. | Have you timely filed all other required government filings? | ☐ | ☑ | ☐ |
| 8. | Are you current on your quarterly fee payments to the U.S. Trustee or Bankruptcy Administrator? | ☐ | ☐ | ☐ |
| 9. | Have you timely paid all of your insurance premiums? | ☐ | ☐ | ☐ |
| | **If you answer *Yes* to any of the questions in lines 10-18, attach an explanation and label it *Exhibit B.*** | | | |
| 10. | Do you have any bank accounts open other than the DIP accounts? | ☐ | ☐ | ☑ |
| 11. | Have you sold any assets other than inventory? | ☐ | ☑ | ☐ |
| 12. | Have you sold or transferred any assets or provided services to anyone related to the DIP in any way? | ☐ | ☑ | ☐ |
| 13. | Did any insurance company cancel your policy? | ☐ | ☑ | ☐ |
| 14. | Did you have any unusual or significant unanticipated expenses? | ☐ | ☑ | ☐ |
| 15. | Have you borrowed money from anyone or has anyone made any payments on your behalf? | ☐ | ☐ | ☐ |
| 16. | Has anyone made an investment in your business? | ☐ | ☐ | ☐ |

17. Have you paid any bills you owed before you filed bankruptcy?   ☐ ☐ ☐

18. Have you allowed any checks to clear the bank that were issued before you filed bankruptcy?   ☐ ☐ ☐

---

### 2. Summary of Cash Activity for All Accounts

19. **Total opening balance of all accounts**

    This amount must equal what you reported as the cash on hand at the end of the month in the previous month. If this is your first report, report the total cash on hand as of the date of the filing of this case.

    $ 5244.88

20. **Total cash receipts**

    Attach a listing of all cash received for the month and label it *Exhibit C*. Include all cash received even if you have not deposited it at the bank, collections on receivables, credit card deposits, cash received from other parties, or loans, gifts, or payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit C*.

    Report the total from *Exhibit C* here.

    $ 12,261.32

21. **Total cash disbursements**

    Attach a listing of all payments you made in the month and label it *Exhibit D*. List the date paid, payee, purpose, and amount. Include all cash payments, debit card transactions, checks issued even if they have not cleared the bank, outstanding checks issued before the bankruptcy was filed that were allowed to clear this month, and payments made by other parties on your behalf. Do not attach bank statements in lieu of *Exhibit D*.

    Report the total from *Exhibit D* here.

    – $ 16,957.67

22. **Net cash flow**

    Subtract line 21 from line 20 and report the result here.
    This amount may be different from what you may have calculated as *net profit*.

    + $ 4696.35

23. **Cash on hand at the end of the month**

    Add line 22 + line 19. Report the result here.

    Report this figure as the *cash on hand at the beginning of the month* on your next operating report.

    = $ 548.53

    This amount may not match your bank account balance because you may have outstanding checks that have not cleared the bank or deposits in transit.

---

### 3. Unpaid Bills

Attach a list of all debts (including taxes) which you have incurred since the date you filed bankruptcy but have not paid. Label it *Exhibit E*. Include the date the debt was incurred, who is owed the money, the purpose of the debt, and when the debt is due. Report the total from *Exhibit E* here.

24. **Total payables**

    *(Exhibit E)*

    1ST QTR 941  24,467.41
    2ND QTR 941   1,729.71
    3RD QTR 941   2,640.69
                 28,837.81

    $ 28,837.81

---

## 4. Money Owed to You

Attach a list of all amounts owed to you by your customers for work you have done or merchandise you have sold. Include amounts owed to you both before, and after you filed bankruptcy. Label it *Exhibit F*. Identify who owes you money, how much is owed, and when payment is due. Report the total from *Exhibit F* here.

25. **Total receivables**                                                                 $ _____

    *(Exhibit F)*

## 5. Employees

26. What was the number of employees when the case was filed?

27. What is the number of employees as of the date of this monthly report?

## 6. Professional Fees

28. How much have you paid this month in professional fees related to this bankruptcy case?        $ _____

29. How much have you paid in professional fees related to this bankruptcy case since the case was filed?   $ _____

30. How much have you paid this month in other professional fees?                                  $ __400___

31. How much have you paid in total other professional fees since filing the case?                 $ _____

## 7. Projections

Compare your actual cash receipts and disbursements to what you projected in the previous month. Projected figures in the first month should match those provided at the initial debtor interview, if any.

|  | Column A | | Column B | | Column C |
|---|---|---|---|---|---|
|  | Projected | — | Actual | = | Difference |
|  | Copy lines 35-37 from the previous month's report. | | Copy lines 20-22 of this report. | | Subtract Column B from Column A. |
| 32. **Cash receipts** | $ _____ | — | $ _____ | = | $ _____ |
| 33. **Cash disbursements** | $ _____ | — | $ _____ | = | $ _____ |
| 34. **Net cash flow** | $ _____ | — | $ _____ | = | $ _____ |

35. Total projected cash receipts for the next month:                           $ _____

36. Total projected cash disbursements for the next month:                    - $ _____

37. Total projected net cash flow for the next month:                         = $ _____

## 8. Additional Information

If available, check the box to the left and attach copies of the following documents.

☐ 38. Bank statements for each open account (redact all but the last 4 digits of account numbers).

☐ 39. Bank reconciliation reports for each account.

☐ 40. Financial reports such as an income statement (profit & loss) and/or balance sheet.

☐ 41. Budget, projection, or forecast reports.

☐ 42. Project, job costing, or work-in-progress reports.



# EXHIBIT "2"

## Schedules/Statements/New Case Deficiencies:

|  |  |  |
|---|---|---|
| Filed: 06/30/2025 | Closed: |
| Reopen: | Dismissed: |
|  | Dismissed(jdb): |
| Converted: | Discharged: |
|  | Discharged(jdb): |

### 25-32454-mvl11 L.D. Lytle Inc,

Type: bk         Chapter: 11 v         Office: 3 (Dallas)

Assets: y         Judge: mvl         Case Flag: REFORM, Subchapter_V, EXHIBITS, SmBus

### U.S. Bankruptcy Court

### Northern District of Texas

Notice of Electronic Filing

The following transaction was received from Joyce W. Lindauer entered on 7/28/2025 at 4:55 PM CDT and filed on 7/28/2025

**Case Name:**      L.D. Lytle Inc,

**Case Number:**    25-32454-mvl11

**Document Number:** 38

**Docket Text:**

Schedules: Schedules A-B and D-H with Summary of Assets and Liabilities (with Declaration Under Penalty of Perjury for Non-Individual Debtors,). Filed by Debtor L.D. Lytle Inc, (RE: related document(s)[8] Notice of deficiency). (Lindauer, Joyce)

The following document(s) are associated with this transaction:

**Document description:** Main Document

**Original filename:** Schedules LD LYTLE.pdf

**Electronic document Stamp:**

[STAMP bkecfStamp_ID=1017686615 [Date=7/28/2025] [FileNumber=51996741-0] [a296436ab01cedc8a50f1badb2305ab03f0f4e23dcef0f5d6fefc328074679d6c714c6d609b133c8c94b2c5aafa6581c3741870f35e30de8d166e4ec2f66d426]]

**25-32454-mvl11 Notice will be electronically mailed to:**

Katharine B. Clark -SBRA V
KClark@ThompsonCoburn.com,
smeiners@thompsoncoburn.com;ldebardeleben@thompsoncoburn.com;KClark@ecf.axosfs.com;lbrasher@thompsoncoburn.com;hfischer@thompsoncoburn.com

Shanna M. Kaminski on behalf of Interested Party United First, LLC
skaminski@kaminskilawpllc.com

John P. Lewis, Jr. on behalf of Creditor Three Horizons Group, LLC
jplewis@haywardfirm.com, mholmes@haywardfirm.com

Joyce W. Lindauer on behalf of Debtor L.D. Lytle Inc,
joyce@joycelindauer.com, dian@joycelindauer.com;JoyceWLindauerAttorneyPLLC@jubileebk.net

Wyatt John Shirley on behalf of Creditor Three Horizons Group, LLC
wshirley@haywardfirm.com

John Kendrick Turner on behalf of Creditor Ellis County
john.turner@lgbs.com, Dora.Casiano-Perez@lgbs.com;John.Turner@ecf.courtdrive.com

United States Trustee
ustpregion06.da.ecf@usdoj.gov

Broocks Wilson on behalf of Interested Party United First, LLC
mack@wilson-pllc.com

**25-32454-mvl11 Notice will not be electronically mailed to:**

Ally Bank c/o AIS Portfolio Services, LLC
4515 N Santa Fe Ave. Dept. APS
Oklahoma City, OK 73118

Debtor Name **L.D. Lytle Inc,**

United States Bankruptcy Court for the: **Northern** District of **Texas**

(State)

Case number (If known): **25-32454-mvl**

☐ Check if this is an amended filing

## Official Form 206A/B

# Schedule A/B: Assets — Real and Personal Property 12/15

Disclose all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest. Include all property in which the debtor holds rights and powers exercisable for the debtor's own benefit. Also include assets and properties which have no book value, such as fully depreciated assets or assets that were not capitalized. In Schedule A/B, list any executory contracts or unexpired leases. Also list them on *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G).

Be as complete and accurate as possible. If more space is needed, attach a separate sheet to this form. At the top of any pages added, write the debtor's name and case number (if known). Also identify the form and line number to which the additional information applies. If an additional sheet is attached, include the amounts from the attachment in the total for the pertinent part.

For Part 1 through Part 11, list each asset under the appropriate category or attach separate supporting schedules, such as a fixed asset schedule or depreciation schedule, that gives the details for each asset in a particular category. List each asset only once. In valuing the debtor's interest, do not deduct the value of secured claims. See the instructions to understand the terms used in this form.

| Part 1: | Cash and cash equivalents |
| --- | --- |

1. **Does the debtor have any cash or cash equivalents?**

   ☐ No. Go to Part 2.
   ☑ Yes. Fill in the information below.

| All cash or cash equivalents owned or controlled by the debtor | Current value of debtor's interest |
| --- | --- |

2. **Cash on hand**

3. **Checking, savings, money market, or financial brokerage accounts** *(Identify all)*

| | Name of institution (bank or brokerage firm) | Type of account | Last 4 digits of account number | Current value of debtor's interest |
| --- | --- | --- | --- | --- |
| 3.1. | **Citizens National Bank of Texas** | **Checking account** | **5 6 4 3** | **$482.82** |
| 3.2. | **Commercial State Bank** | **Checking account** | **6 0 6 0** | **$2,000.00** |
| 3.3. | **Community National Bank + Trust of Texas** | **Checking account** | **4 4 6 9** | **$200.00** |
| 3.4. | **Harmony Bank** | **Checking account** | **7 3 6 4** | **$12,000.00** |
| 3.5. | **Ennis State Bank** | **Checking account** | **2 2 6 6** | **$500.00** |

4. **Other cash equivalents** *(Identify all)*

   4.1
   4.2

5. **Total of Part 1**

   Add lines 2 through 4 (including amounts on any additional sheets). Copy the total to line 80. **$15,182.82**

| Part 2: | Deposits and prepayments |
| --- | --- |

6. **Does the debtor have any deposits or prepayments?**

   ☐ No. Go to Part 3.
   ☑ Yes. Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|

**7.**   **Deposits, including security deposits and utility deposits**

Description, including name of holder of deposit

    7.1   **Deposit for Ferris Location?** _____     **unknown**

**8.**   **Prepayments, including prepayments on executory contracts, leases, insurance, taxes, and rent**

Description, including name of holder of prepayment

    8.1   **Water for Ennis Daycare** _____     **$100.00**

**9.**   **Total of Part 2**     **$100.00**
Add lines 7 through 8. Copy the total to line 81.

---

## Part 3:   Accounts receivable

**10.**   **Does the debtor have any accounts receivable?**

☑ No. Go to Part 4.

☐ Yes. Fill in the information below.

|  | | Current value of debtor's interest |
|---|---|---|

**11.**   **Accounts receivable**

11a. 90 days old or less:     _____ - _____ =..... ➔     _____
                    face amount         doubtful or uncollectible accounts

11b. Over 90 days old:     _____ - _____ =..... ➔     _____
                    face amount         doubtful or uncollectible accounts

**12.**   **Total of Part 3**
Current value on lines 11a + 11b = line 12. Copy the total to line 82.

---

## Part 4:   Investments

**13.**   **Does the debtor own any investments?**

☑ No. Go to Part 5.

☐ Yes. Fill in the information below.

|  | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|

**14.**   **Mutual funds or publicly traded stocks not included in Part 1**

Name of fund or stock:

    14.1 _____     _____     _____

    14.2 _____     _____     _____

**15.**   **Non-publicly traded stock and interests in incorporated and unincorporated businesses, including any interest in an LLC, partnership, or joint venture**

Name of entity:                  % of ownership:

    15.1. _____     _____     _____     _____

15.2.

16. **Government bonds, corporate bonds, and other negotiable and non-negotiable instruments not included in Part 1**

Describe:

16.1

16.2

17. **Total of Part 4**

Add lines 14 through 16. Copy the total to line 83.

## Part 5:   Inventory, excluding agriculture assets

18. **Does the debtor own any inventory (excluding agriculture assets)?**

☐ No. Go to Part 6.

☑ Yes. Fill in the information below.

| General description | Date of the last physical inventory | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| **19. Raw materials** | | | | |
| | MM / DD / YYYY | | | |
| **20. Work in progress** | | | | |
| | MM / DD / YYYY | | | |
| **21. Finished goods, including goods held for resale** | | | | |
| | MM / DD / YYYY | | | |
| **22. Other inventory or supplies** | | | | |
| Food and Daycare Supplies | MM / DD / YYYY | unknown | | $6,200.00 |

23. **Total of Part 5**

Add lines 19 through 22. Copy the total to line 84.

$6,200.00

24. **Is any of the property listed in Part 5 perishable?**

☐ No

☑ Yes

25. **Has any of the property listed in Part 5 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes.   Book value _____ Valuation method _____ Current value _____

26. **Has any of the property listed in Part 5 been appraised by a professional within the last year?**

☑ No

☐ Yes

### Part 6:    Farming and fishing-related assets (other than titled motor vehicles and land)

27. **Does the debtor own or lease any farming and fishing-related assets (other than titled motor vehicles and land)?**

☑ No. Go to Part 7.

☐ Yes. Fill in the information below.

| General description | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| 28. **Crops—either planted or harvested** | | | |
| 29. **Farm animals** *Examples:* Livestock, poultry, farm-raised fish | | | |
| 30. **Farm machinery and equipment** (Other than titled motor vehicles) | | | |
| 31. **Farm and fishing supplies, chemicals, and feed** | | | |
| 32. **Other farming and fishing-related property not already listed in Part 6** | | | |

33. **Total of Part 6**

Add lines 28 through 32. Copy the total to line 85.

34. **Is the debtor a member of an agricultural cooperative?**

☑ No

☐ Yes. Is any of the debtor's property stored at the cooperative?

     ☐ No

     ☐ Yes

35. **Has any of the property listed in Part 6 been purchased within 20 days before the bankruptcy was filed?**

☑ No

☐ Yes.   Book value _____   Valuation method _____   Current value _____

36. **Is a depreciation schedule available for any of the property listed in Part 6?**

☑ No

☐ Yes

37. **Has any of the property listed in Part 6 been appraised by a professional within the last year?**

☑ No

☐ Yes

### Part 7:    Office furniture, fixtures, and equipment; and collectibles

38. **Does the debtor own or lease any office furniture, fixtures, equipment, or collectibles?**

☐ No. Go to Part 8.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **39. Office furniture** | | | |
| Tables, Beds, Bookshelves, Classroom Equipment | unknown | | $10,000.00 |
| **40. Office fixtures** | | | |
| Office fixtures | unknown | | $9,000.00 |
| **41. Office equipment, including all computer equipment and communication systems equipment and software** | | | |
| 6 Computers, Software, 2 Copier, Phones | unknown | | $5,800.00 |
| **42. Collectibles** *Examples:* Antiques and figurines; paintings, prints, or other artwork; books, pictures, or other art objects; china and crystal; stamp, coin, or baseball card collections; other collections, memorabilia, or collectibles | | | |
| 42.1 | | | |
| 42.2 | | | |
| 42.3 | | | |
| **43. Total of Part 7** Add lines 39 through 42. Copy the total to line 86. | | | $24,800.00 |

**44. Is a depreciation schedule available for any of the property listed in Part 7?**

☑ No

☐ Yes

**45. Has any of the property listed in Part 7 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 8:  Machinery, equipment, and vehicles

**46. Does the debtor own or lease any machinery, equipment, or vehicles?**

☐ No. Go to Part 9.

☑ Yes. Fill in the information below.

| General description Include year, make, model, and identification numbers (i.e., VIN, HIN, or N-number) | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **47. Automobiles, vans, trucks, motorcycles, trailers, and titled farm vehicles** | | | |
| 47.1 **2017 Chevrolet Express G 3500 / VIN: 9438** | unknown | | $13,253.00 |
| 47.2 **2018 Chevrolet Express G 3500 / VIN: 8139** | unknown | | $14,000.00 |
| 47.3 **2007 Chevrolet Express G 3500 / VIN: 3044** | unknown | | $5,306.00 |
| 47.4 **2006 Ford Econoline / VIN: 1317** | unknown | | $4,130.00 |

**48.**    **Watercraft, trailers, motors, and related accessories** Examples: Boats, trailers, motors, floating homes, personal watercraft, and fishing vessels

     48.1 _____

     48.2 _____

**49.**    **Aircraft and accessories**

     49.1 _____

     49.2 _____

**50.**    **Other machinery, fixtures, and equipment (excluding farm machinery and equipment)**

_____

**51.**    **Total of Part 8**

Add lines 47 through 50. Copy the total to line 87.      **$36,689.00**

**52.**    **Is a depreciation schedule available for any of the property listed in Part 8?**

     ☑ No

     ☐ Yes

**53.**    **Has any of the property listed in Part 8 been appraised by a professional within the last year?**

     ☑ No

     ☐ Yes

## Part 9:    Real property

**54.**    **Does the debtor own or lease any real property?**

     ☐ No. Go to Part 10.

     ☑ Yes. Fill in the information below.

**55.**    **Any building, other improved real estate, or land which the debtor owns or in which the debtor has an interest**

| Description and location of property<br>Include street address or other description such as Assessor Parcel Number (APN), and type of property (for example, acreage, factory, warehouse, apartment or office building), if available. | Nature and extent of debtor's interest in property | Net book value of debtor's interest<br><br>(Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|---|
| 55.1 **Red Oak Property** | Fee Simple | unknown | | $1,700,000.00 |
| 55.2 **Ennis Property** | Fee Simple | unknown | | $3,800,000.00 |

**56.**    **Total of Part 9**

Add the current value on lines 55.1 through 55.6 and entries from any additional sheets. Copy the total to line 88.      **$5,500,000.00**

**57.**    **Is a depreciation schedule available for any of the property listed in Part 9?**

     ☑ No

     ☐ Yes

**58.** **Has any of the property listed in Part 9 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 10:    Intangibles and intellectual property

**59.** **Does the debtor have any interests in intangibles or intellectual property?**

☐ No. Go to Part 11.

☑ Yes. Fill in the information below.

| General description | Net book value of debtor's interest (Where available) | Valuation method used for current value | Current value of debtor's interest |
|---|---|---|---|
| **60.** **Patents, copyrights, trademarks, and trade secrets** | | | |
| | | | |
| **61.** **Internet domain names and websites** | | | |
| www.sunshinekidsacademy.net | unknown | | $0.00 |
| www.lifesupporttraining.net | unknown | | $0.00 |
| **62.** **Licenses, franchises, and royalties** | | | |
| Licenses | unknown | | $0.00 |
| **63.** **Customer lists, mailing lists, or other compilations** | | | |
| Customer lists | unknown | | $0.00 |
| **64.** **Other intangibles, or intellectual property** | | | |
| | | | |
| **65.** **Goodwill** | | | |
| Goodwill | unknown | | $0.00 |

**66.** **Total of Part 10**

Add lines 60 through 65. Copy the total to line 89.
                                                         **$0.00**

**67.** **Do your lists or records include personally identifiable information of customers** (as defined in 11 U.S.C. §§ 101(41A) and 107)**?**

☐ No

☑ Yes

**68.** **Is there an amortization or other similar schedule available for any of the property listed in Part 10?**

☑ No

☐ Yes

**69.** **Has any of the property listed in Part 10 been appraised by a professional within the last year?**

☑ No

☐ Yes

## Part 11:    All other assets

70. **Does the debtor own any other assets that have not yet been reported on this form?**

Include all interests in executory contracts and unexpired leases not previously reported on this form.

☑ No. Go to Part 12.

☐ Yes. Fill in the information below.

**Current value of debtor's interest**

71. **Notes receivable**

Description (include name of obligor)

_____  _____ − _____ =➜ _____

Total face amount  doubtful or uncollectible amount

72. **Tax refunds and unused net operating losses (NOLs)**

Description (for example, federal, state, local)

_____  Tax year _____  _____

_____  Tax year _____  _____

_____  Tax year _____  _____

73. **Interests in insurance policies or annuities**

_____  _____

74. **Causes of action against third parties (whether or not a lawsuit has been filed)**

_____  _____

**Nature of claim** _____

**Amount requested** _____

75. **Other contingent and unliquidated claims or causes of action of every nature, including counterclaims of the debtor and rights to set off claims**

_____  _____

**Nature of claim** _____

**Amount requested** _____

76. **Trusts, equitable or future interests in property**

_____  _____

77. **Other property of any kind not already listed** _Examples:_ Season tickets, country club membership

_____  _____

_____  _____

78. **Total of Part 11**

Add lines 71 through 77. Copy the total to line 90.  _____

79. **Has any of the property listed in Part 11 been appraised by a professional within the last year?**

  ☑ No

  ☐ Yes

## Part 12:    Summary

**In Part 12 copy all of the totals from the earlier parts of the form.**

| Type of property | Current value of personal property | Current value of real property |
|---|---|---|
| 80. **Cash, cash equivalents, and financial assets.** *Copy line 5, Part 1.* | $15,182.82 | |
| 81. **Deposits and prepayments.** *Copy line 9, Part 2.* | $100.00 | |
| 82. **Accounts receivable.** *Copy line 12, Part 3.* | | |
| 83. **Investments.** *Copy line 17, Part 4.* | | |
| 84. **Inventory.** *Copy line 23, Part 5.* | $6,200.00 | |
| 85. **Farming and fishing-related assets.** *Copy line 33, Part 6.* | | |
| 86. **Office furniture, fixtures, and equipment; and collectibles.** *Copy line 43, Part 7.* | $24,800.00 | |
| 87. **Machinery, equipment, and vehicles.** *Copy line 51, Part 8.* | $36,689.00 | |
| 88. **Real property.** *Copy line 56, Part 9.* ................................................. ➡ | | $5,500,000.00 |
| 89. **Intangibles and intellectual property.** *Copy line 66, Part 10.* | $0.00 | |
| 90. **All other assets.** *Copy line 78, Part 11.* | + | |
| 91. **Total.** *Add lines 80 through 90 for each column.* .........................91a. | $82,971.82 | + 91b. $5,500,000.00 |
| 92. **Total of all property on Schedule A/B.** Lines 91a + 91b = 92. ................................................................................ | | $5,582,971.82 |

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| | § | |
| L.D. LYTLE, INC., | § | CASE NO. 25-32454 |
| | § | |
| Debtor. | § | Chapter 11 |

### FIRST MODIFICATION TO DEBTOR'S PLAN OF
### <u>REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11</u>

COMES NOW L.D. Lytle, Inc., the Debtor in the above-styled and numbered case ("Debtor"), and files this First Modification to Debtor's Plan of Reorganization Under Subchapter V of Chapter 11 to address the objection to confirmation filed by Texas Capital Bank and the claim of the Internal Revenue Service. In accordance with Bankruptcy Rule 3019, to the extent applicable, the Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date. The changes proposed herein are neither material nor adverse to any party and should be made a part of the Plan approved in this case and are set forth as follows:

**<u>Claims of Texas Capital Bank</u>.**

Texas Capital Bank claims it has a Secured Claim in the amount of $1,024,900. Based on this claim, the Debtor proposes to pay the Allowed Secured Claim (once determined by the Court) over 30 years with interest thereon at the rate of 7.5% per annum from the Effective Date.

Any provision in the Plan that restricts the non-debtor claims of Texas Capital Bank are of no force or effect as to Texas Capital Bank.

There are currently no funds from the sale of the Ennis Center. The Red Oak sales proceeds are being used to fund the Plan and the Debtor's ongoing operations.

**Claims of the IRS**.

The IRS Allowed Claim is treated as follows: Paid 100% from the Petition Date with interest on such claim at the rate of 7% per annum. This Claim is impaired.

**Default Provision - IRS**. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (hereafter, "IRS Claim"):

(1)   Notwithstanding any other provision in the Plan, if the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor(s), the Reorganized Debtor(s) and/or any successor(s) in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A)  The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien, setoff and recoupment, and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(B)  The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C)  The IRS shall have the right to proceed to collect from the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2)   If the IRS declares the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest to be in default of the Debtor's, the Reorganized Debtor's and/or any successor in interest's obligations under the Plan, then the entire

imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor(s), Reorganized Debtor(s), and/or any successor(s) in interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor(s), Reorganized Debtor(s), and/or any successor(s) in interest is in default.

(3) If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest, or its counsel. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor(s), the Reorganized Debtor(s), and/or any successor(s) in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor(s), the Reorganized Debtor(s) and/or any successor(s) in interest to the Internal Revenue Service.

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor(s) from and after the Confirmation Date, or the Reorganized Debtor(s) and/or any successor(s) in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor(s) from and after the Confirmation Date, or the Reorganized Debtor(s) and/or any successor(s) in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

Projections to support the Plan are attached hereto as Exhibit "1".

Dated: March 25, 2026.

Submitted By:

_/s/ Joyce Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

_/s/ Lisa Lytle_
Lisa Lytle
Owner of the Debtor

# CHAPTER 11 DEBTOR PROJECTIONS
## L.D. Lytle Inc.
### 3/23/2026

| | | Month 1 | Month 2 | Month 3 | Month 4 | Month 5 | Month 6 |
|---|---|---|---|---|---|---|---|
| **INCOME** | | | | | | | |
| | Gross Income | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | **NET INCOME** | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| **EXPENSES** | | | | | | | |
| | Accounting-CPA | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | Insurance | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | Maintenace | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | Estimated Payroll (including payroll taxes) | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 |
| | Utilities - Internet | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 |
| | Supplies | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | Utilities - Electricity | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| | Untilities - Gas | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | Utilities - Telephone | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 |
| | Utilities - DishTV | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| | Utilities - Water/Trash/Serwer | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| | Real Estate Taxes | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| | **TOTAL EXPENSES** | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 |
| **PLAN PAYMENTS** | **Class** | | | | | | |
| - | Allowed Administrative Claims | 20,000.00 | | | | | |
| - | Priority Claims (IRS) | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 |
| 1 | Allowed Secured Claim of Ellis County, Texas | paid | paid | paid | paid | paid | paid |
| 2 | Allowed Secured Claim of The Horizons Group, LLC | paid | paid | paid | paid | paid | paid |
| 3 | Allowed Secured Claim of Expansion Capital Group | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| 4 | Allowed Secured Claim of Home Tax Solutions | paid | paid | paid | paid | paid | paid |
| 5 | Allowed Secured Claim of Ally Bank | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| 6 | Allowed Secured Claim of United First, LLC | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| 7 | Allowed Secured Claim of Ennis State Bank | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| 8 | Allowed Unsecured Claims | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 |
| 8A | Texas Capital Bank | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 |
| 9 | Equity Interest Holders | | | | | | |
| | **TOTAL PLAN PAYMENTS** | 33,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 |
| **NET INCOME** | | -11,244.63 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 |
| **CUMULATIVE INCOME** | | -11,244.63 | -2,489.26 | 6,266.11 | 15,021.48 | 23,776.85 | 32,532.22 |

# EXHIBIT "1"

| | Month 7 | Month 8 | Month 9 | Month 10 | Month 11 | Month 12 | Month 13 | Month 14 | Month 15 | Month 16 | Month 17 | Month 18 | Month 19 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 |
| | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 |
| | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 |
| | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 |
| | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 |
| | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 |
| | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 |
| | 41,287.59 | 50,042.96 | 58,798.33 | 67,553.70 | 76,309.07 | 85,064.44 | 93,819.81 | 102,575.18 | 111,330.55 | 120,085.92 | 128,841.29 | 137,596.66 | 146,352.03 |

| | Month 20 | Month 21 | Month 22 | Month 23 | Month 24 | Month 25 | Month 26 | Month 27 | Month 28 | Month 29 | Month 30 | Month 31 | Month 32 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 |
| | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 |
| | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 |
| | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 |
| | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 |
| | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 |
| | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 |
| | 155,107.40 | 163,862.77 | 172,618.14 | 181,373.51 | 190,128.88 | 198,884.25 | 207,639.62 | 216,394.99 | 225,150.36 | 233,905.73 | 242,661.10 | 251,416.47 | 260,171.84 |

| | Month 33 | Month 34 | Month 35 | Month 36 | Month 37 | Month 38 | Month 39 | Month 40 | Month 41 | Month 42 | Month 43 | Month 44 | Month 45 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 |
| | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 |
| | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 |
| | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 |
| | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 |
| | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 |
| | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 |
| | 268,927.21 | 277,682.58 | 286,437.95 | 295,193.32 | 303,948.69 | 312,704.06 | 321,459.43 | 330,214.80 | 338,970.17 | 347,725.54 | 356,480.91 | 365,236.28 | 373,991.65 |

| | Month 46 | Month 47 | Month 48 | Month 49 | Month 50 | Month 51 | Month 52 | Month 53 | Month 54 | Month 55 | Month 56 | Month 57 | Month 58 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 | 93,000.00 |
| | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 | 1,000.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 | 1,500.00 |
| | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 | 55,000.00 |
| | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 | 680.00 |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 | 4,800.00 |
| | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 |
| | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 | 480.00 |
| | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 | 150.00 |
| | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 | 800.00 |
| | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 | 4,500.00 |
| | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 | 70,910.00 |
| | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 | 758.11 |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid | paid |
| | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured | unsecured |
| | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 | 650.00 |
| | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 | 4,266.56 |
| | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 | 7,159.96 |
| | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 | 13,334.63 |
| | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 | 8,755.37 |
| | 382,747.02 | 391,502.39 | 400,257.76 | 409,013.13 | 417,768.50 | 426,523.87 | 435,279.24 | 444,034.61 | 452,789.98 | 461,545.35 | 470,300.72 | 479,056.09 | 487,811.46 |

|  | Month 59 | Month 60 |
|---|---|---|
|  | 93,000.00 | 93,000.00 |
|  | 93,000.00 | 93,000.00 |
|  | 1,000.00 | 1,000.00 |
|  | 1,500.00 | 1,500.00 |
|  | 1,500.00 | 1,500.00 |
|  | 55,000.00 | 55,000.00 |
|  | 680.00 | 680.00 |
|  | 500.00 | 500.00 |
|  | 4,800.00 | 4,800.00 |
|  | 0.00 | 0.00 |
|  | 480.00 | 480.00 |
|  | 150.00 | 150.00 |
|  | 800.00 | 800.00 |
|  | 4,500.00 | 4,500.00 |
|  | 70,910.00 | 70,910.00 |
|  | 758.11 | 758.11 |
|  | paid | paid |
|  | paid | paid |
|  | unsecured | unsecured |
|  | paid | paid |
|  | 500.00 | 500.00 |
|  | unsecured | unsecured |
|  | 650.00 | 650.00 |
|  | 4,266.56 | 4,266.56 |
|  | 7,159.96 | 7,159.96 |
|  | 13,334.63 | 13,334.63 |
|  | 8,755.37 | 8,755.37 |
|  | 496,566.83 | 505,322.20 |

Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| | § | |
| **L.D. LYTLE, INC.,** | § | **CASE NO. 25-32454** |
| | § | |
| **Debtor.** | § | **Chapter 11** |

**SECOND MODIFICATION TO DEBTOR'S PLAN OF**
**REORGANIZATION UNDER SUBCHAPTER V OF CHAPTER 11**

COMES NOW L.D. Lytle, Inc., the Debtor in the above-styled and numbered case ("Debtor"), and files this Second Modification to Debtor's Plan of Reorganization Under Subchapter V of Chapter 11 to address the claim(s) of the Internal Revenue Service. In accordance with Bankruptcy Rule 3019, to the extent applicable, the Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date. The changes proposed herein are neither material nor adverse to any party and should be made a part of the Plan approved in this case and are set forth as follows and supersede any prior terms in the Plan or any other Modifications regarding the claim(s) of the IRS:

**Claims of the IRS.**

The IRS Allowed Claim is treated as follows: Paid 100% from the Petition Date with interest on such claim at the rate of 7% compounded daily under 26 U.S.C. § 6622. This Claim is impaired. It will be paid monthly over 60 months from the Petition Date and payments will commence on the Effective Date of the Plan and continue monthly for the remaining term of the Plan computed from the Petition Date.

**Default Provision - IRS**. Notwithstanding any other provision or term of this Plan or Confirmation Order, the following Default Provision shall control as to the United States

of America, Internal Revenue Service ("IRS") and all of its claims, including any administrative claim (hereafter, "IRS Claim"):

(1) Notwithstanding any other provision in the Plan, if the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest fails to pay when due any payment required to be made on federal taxes, the IRS Claim, or other payment required to be made to the IRS under the terms and provisions of this Plan, the Confirmation Order, or the Internal Revenue Code (26 U.S.C.), or fails to timely file any required federal tax return, or if any other event of default as set forth in the Plan occurs, the IRS shall be entitled to give the Debtor(s), the Reorganized Debtor(s) and/or any successor(s) in interest and their counsel of record, by United States Certified Mail, written notice of the failure and/or default with demand that it be cured, and if the failure and/or default is not cured within 14 days of said notice and demand, then the following shall apply to the IRS:

(A) The administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal tax lien, setoff and recoupment, and the powers of levy, seizure, and collection as provided under the Internal Revenue Code;

(B) The automatic stay of 11 U.S.C. § 362 and any injunction of this Plan or in the Confirmation Order shall, with regard to the IRS only, lift or terminate without further notice or hearing by the Court, and the entire imposed liability owed to the IRS, together with any unpaid current liabilities, may become due and payable immediately; and

(C) The IRS shall have the right to proceed to collect from the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest any of the prepetition tax liabilities and related penalties and interest through administrative or judicial collection procedures available under the United States Code as if no bankruptcy petition had been filed and as if no plan had been confirmed.

(2) If the IRS declares the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest to be in default of the Debtor's, the Reorganized Debtor's and/or any successor in interest's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, shall become due and payable immediately upon written demand to the Debtor(s), Reorganized Debtor(s), and/or any successor(s) in interest. Failure of the IRS to declare a failure and/or default does not constitute a waiver by the United States or its agency the IRS of the right to declare that the Debtor(s), Reorganized Debtor(s), and/or any successor(s) in interest is in default.

(3) If full payment is not made within fourteen (14) days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall

only be required to send two notices of failure and/or default, and upon the third event of a failure and/or default the IRS shall be entitled to proceed as set out in paragraphs (A), (B), and/or (C) herein above without further notice to the Debtor(s), the Reorganized Debtor(s), or any successor(s) in interest, or its counsel. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan.

(4) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor(s), the Reorganized Debtor(s), and/or any successor(s) in interest to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor(s), the Reorganized Debtor(s) and/or any successor(s) in interest to the Internal Revenue Service.

(5) The term "any payment required to be made on federal taxes," as used herein above, is defined as: any payment or deposit required by the Internal Revenue Code to be made by the Debtor(s) from and after the Confirmation Date, or the Reorganized Debtor(s) and/or any successor(s) in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full. The term "any required tax return," as used herein above, is defined as: any tax return or report required by the Internal Revenue Code to be made by the Debtor(s) from and after the Confirmation Date, or the Reorganized Debtor(s) and/or any successor(s) in interest from and after the Effective Date, to the date the IRS Claim is together with interest paid in full.

Dated: April 7, 2026.

Submitted By:

_/s/ Joyce Lindauer_
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
117 S. Dallas Street
Ennis, Texas 75119
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR DEBTOR

_/s/ Lisa Lytle_
Lisa Lytle
Owner of the Debtor